Kristin Arnold
9090 Judicial Drive, #9207
San Diego, CA 92122
Telephone: (301) 275-3959
Email: Kristin.CreoArnold@gmail.com
Pro Se Plaintiff

**FILED**

Dec 03 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ MelissaE          DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN ARNOLD,<br><br>Plaintiff,<br><br>vs.<br><br>NUCLEUS CENTRAL,<br><br>Defendant | Case No.: **'18CV2724 JLS  WVG**<br><br>COMPLAINT, JURY DEMAND |

Plaintiff Kristin Arnold alleges Race Discrimination, Gender Discrimination, and Retaliation by Defendant in violation of Title VII of the Civil Rights Act of 1964.

Dated: December 3, 2018

By: _Kristin Arnold_

Kristin Arnold
Pro Se Plaintiff
Email: Kristin.CreoArnold@gmail.com

Introduction

1.    Plaintiff, Kristin Arnold proceeding Pro Se, brings this action pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. Section 2000e), as amended to remedy acts of employment discrimination and retaliation perpetrated against her by the Defendant, Nucleus Central.

Jurisdiction

2.    This Court has jurisdiction over this civil action pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C Section 2000e).  Further, this Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C Section 1332 as the amount in controversy exceeds $75,000, the Defendant is incorporated and domiciled in Georgia, and Plaintiff is domiciled in California.

Alternatively, this Court has Federal Question jurisdiction in this case as this case involves a federal question and the Court has personal jurisdiction as evidenced by Nucleus Central having a physical business office in the State of California; Nucleus Central is registered with the State of California Secretary of State (Corporate Number C3541368) to do business in the state, throughout the state; and various HR functions as well as the HR Representative (Vice-President Sharon Rundberg) to which the Plaintiff initially complained of race and sex discrimination were located in the California office at the time of the discriminatory acts.

Plaintiff has exhausted her administrative remedies by filing before the Equal Employment Opportunity Commission on March 15, 2017 (Charge Number 410-2017-02997).  A right to sue was mailed on August, 31, 2018 and received on September 5, 2018.  This action is timely filed within 90 days of Plaintiff's receipt of the right to sue.

Venue

3.      Venue is proper under 28 U.S.C. 1391(b)(2) or alternatively 28 U.S.C 1391(b)(3)

Parties

4.      Plaintiff, Kristin Arnold, an African-American female, is currently 37 years old, is a citizen of the United States and domiciled in the State of California.

5.      Defendant, Nucleus Central is a corporation domiciled in the State of Georgia.

Statement of Facts

6.      Plaintiff asserts that Defendant subjected her to disparate treatment discrimination  and hostile work environment (harassment) based on her race (African-American), sex (female), and in retaliation for opposing unlawful employment practices: when it (1) systematically stripped her of her supervisory duties and responsibilities; (2) on or around February 2017, her manager began communicating to her in a condescending manner,

interrogating her about her pre-approved teleworking status; (3) subjected her to a materially adverse employment actions after she opposed unlawful employment practices; and (4) terminated her employment on March 6, 2017, as pretext to hide discrimination.

7.     Plaintiff was hired on July 12, 2006, as a Project Finance Accountant at Meditech Media, a subsidiary of Nucleus Central. In December 2008, it was approved for her to start working remotely from Newark, DE following relocation due to a change in her husband's employment. On January 1, 2012, Plaintiff became a direct employee of Defendant, and was promoted to a Senior Project Finance Accountant. On January 1, 2015, she was promoted to an Associate Finance Manager.  Plaintiff supervised as many as four (4) employees during her tenure as Associate Finance Manager.

8.     On December 12, 2016, Rhand Williams (Caucasian, Male, Prior EEO activity unknown) was hired as the Finance Director for NCI. At that time, Plaintiff's line of reporting was changed from Vicky Malherbe (Race Unknown, Female, Prior EEO Activity Unknown), Chief Finance Officer ("CFO"), US Operations, to Williams. Malherbe became William's manager.  Plaintiff had no interaction with Williams until January 19, 2017, when he called to introduce himself and inquire about her role at NCI.

9.      On February 6, 2017, Plaintiff emailed Sharon Rundberg (Caucasian, Female, Prior EEO Activity Unknown), Vice President Human Resources, US Operations, to set up a meeting to express her concerns about how she was being treated due to her race as an African American employee, and the treatment of her subordinate African American employees.  Plaintiff highlighted the inconsistencies in how Malherbe and Williams managed her as an African-American female employee versus non-African American employees that reported that position. On February 7, 2017, the following incidences of concern and resulting actions were discussed with Rundberg during a phone call and two subsequent follow-up teleconference meetings:

10.     On January 20, 2017, Plaintiff received an email from Williams addressed to her, Sandra Manning (African American, Female, Prior EEO Activity), Senior Finance Project Manager, and Kyle Stewart (African American, Male, Prior EEO Activity Unknown), Finance Project Accountant asking if they had worked the previous day based on the their status on the Skype software. Williams met with the Plaintiff by telephone on January 19, 2017, and he worked in the same office as both Manning and Stewart.  The Plaintiff responded by letting Williams know her Skype account was set to "away" to limit the amount of correspondence received via Skype and encourage use of email for request tracking purposes. Additionally, she informed him there were times when Skype was not available due to IT server

connection issues. Williams instructed Plaintiff, Manning, and Stewart to utilize Skype as it was intended and should be logged in so people could communicate with them. Prior to this conversation, Plaintiff was unaware of any written, verbal or otherwise company or department policy regarding the use of Skype. Plaintiff maintains this line of instruction by Williams was based on discriminatory animus as no other non-African-American employees were directed to utilize Skype in this manner. Nevertheless, Plaintiff complied with Williams' directive, but also maintained a log of other Finance department employees that reported to Williams and Malherbe as the policy was not being equitably enforced across the department.

11.    On February 13, 2017, Plaintiff received an email showing a screenshot of Williams' Skype instant message screen. He asked if she was working that day because the Skype application did not update showing that Plaintiff was available? This was due to a Skype issue that Plaintiff was not aware of that had to be resolved by the IT Department. Williams had exchanged multiple emails with Plaintiff throughout the day, and was aware she was working. Plaintiff noticed from the picture included in the email that Williams' was monitoring Plaintiff, Manning, and Stewart but did not appear to be monitoring non-African-American employees in the department that reported to him and were consistently not logged

into the Skype software. (*See* Exhibit D - Email from Williams Including Skype Screenshot).

12.    On February 6, 2017, Plaintiff received a phone call from Williams where he spoke to her in a hostile way about how she was managing her workload. He interrogated her about where she lived and what time zone she lived in, despite Plaintiff having a pre-approved telework arrangement. Plaintiff maintains Williams did not speak to men or non-African-American employees in the same manner. During that day and the previous week, Plaintiff had provided numerous updates to Williams' letting him know of the status of deliverables and about technical difficulties she was experiencing. These technical difficulties were a result of a software issue that had to be resolved by employees in the United Kingdom, which was a 5-6 hour time zone difference in and of itself. During the interrogation, he insisted that Plaintiff was two weeks to complete a project, when in fact, the "tool" was given on a two day notice. During a phone conversation with Malherbe later that same day, Plaintiff relayed the details of the phone conversation to Malherbe and expressed her concern about how she was treated differently because of her race and subject to severe and pervasive conduct by Williams during that phone conversation. Malherbe agreed that the tone and content of that conversation was not appropriate and said that she would talk to Williams. As a result of the stress experienced during her conversation with Williams, Plaintiff experienced painful

physical symptoms that required her to seek treatment by a physician and chiropractor. Plaintiff expressed concern that the stress she experienced as a result being harassed by Williams impacted her physical health.

13. On December 22, 2016, Rodney Parker (African American, Male, No Prior EEO Activity), Associate Finance Project Accountant, submitted his letter of resignation to Malherbe. She never contacted Parker to acknowledge his resignation, nor timely informed Plaintiff.

14. On January 25, 2017, Andrew Duncan (African-American, Male, No Prior EEO Activity), Associate Project Finance Accountant submitted his resignation to Malherbe. She never acknowledged his resignation, nor timely informed Plaintiff.

15. On January 27, 2017, Williams requested that Duncan train new employee Aditya Patel (Asian, Male, Prior EEO Activity Unknown), Finance Project Analyst, to assume responsibility for his work. Williams never informed Plaintiff of the transition of Duncan's work or notify the Client Service employees of the change in support. After Patel took over responsibility for Duncan's work, Plaintiff received an email from Nucleus X Client Service member Weiying Wang asking who was supporting their accounts. Plaintiff informed Wang that Patel had taken over responsibility for Duncan's work. Plaintiff then received an email from Williams telling her that she was responsible for supporting Nucleus X and that she should not assign any work to Patel without his permission. This is another

example of how Plaintiff was subjected to discrimination based on sex and race when her duties as supervisor were diminished.

16.     On March 6, 2017, Plaintiff received an email meeting notification from Malherbe requesting to catch-up. At the designated meeting time, Plaintiff received a call from Reena Patel Mamman (Asian, Female), Global CFO, and Lenore Wawrzonek (Caucasian, Female), Senior Human Resource Manager. During that call, Plaintiff was notified for the very first time that her department was being restructured and that her position had been eliminated, resulting in her termination. Plaintiff was told that if she could take a more junior position within the department but that they were no longer allowing Finance employees to work remotely. That request was a pretext to hide discrimination because Roger McCarter (Caucasian, Male), Project Director, continued to work remotely after Plaintiff's termination, with no additional contingencies on his remote work arrangement.  Notwithstanding this "proposed" offer to continue employment, no information regarding job title, job description, or compensation was provided to Plaintiff at that time, or even now at the time of this filing.

17.     Following Plaintiff's termination she learned that Defendant maintained the employment of Finance department employee Roger McCarter (a white male that resides in Louisville, KY and works remotely). Although McCarter's title was Project Director, his responsibilities at the time of Arnold's termination were the

same duties performed by a Finance Project Accountant. McCarter was transferred to the Finance Department in October 2016.

18.    Defendant's reasoning of why it terminated Plaintiff's employment is not factually supported because Defendant maintained the employment of McCarter despite the following circumstances:

- McCarter was working remotely and they eliminated telework in the Finance department;

- McCarter's compensation was higher than Plaintiff;

- McCarter had 6 months experience in the NCI Finance department and Plaintiff had over 10.5 years experience;

- McCarter had no training or experience using the NCI accounting software (Maconomy) or with any financial reporting templates;

- McCarter did not have experience working with Finance team members in other global regions;

- Plaintiff had a higher level of skill using Excel which was a highly utilized software application at NCI;

- MaCarter did not demonstrate a complete understanding of finance and accounting principles or procedures at NCI due to his limited exposure; and

- Plaintiff had experience working on all 11 US companies in support of several dozen clients and McCarter primarily supported one US company (Articulate Science) in support of two clients.

19.    As way of pretext, Plaintiff maintains Defendant systematically failed to backfill subordinate positions and/or filled subordinate positions and systematically relocated them to other divisions supervised by white males; in order to justify Plaintiff not having any work or supervisory responsibilities for the termination.

20.    Plaintiff also notes that within 30 days from when Plaintiff first complained about discrimination to human resources, she was terminated.

## Statement of Claims

21.    By decisions and actions as outlined in paragraphs 6 through 20 above, Defendant discriminated against Plaintiff on account of her sex and race, and retaliated against her for reporting discrimination.

22.    As a result of the aforementioned unlawful employment discrimination, Plaintiff has suffered and continues to suffer curtailment of her career opportunities, loss of pay, personal and professional humiliation, mental and emotional trauma, and physical pain and suffering.

## Prayer for Relief

WHEREFORE, the Plaintiff requests that the court award her:

1. The sum of $89,000 (one year's salary) as backpay.

2. Compensatory damages in the amount of $89,000 for discrimination and retaliation, humiliation, embarrassment, inconvenience, mental anguish, loss of enjoyment of life, frustration, and emotional distress.

3. Damages (pecuniary, future, and nonpecuniary) against Defendant for emotional distress suffered as a result of the violation of law.

4. Punitive damages against the Defendant as a result of intentional and wrongful actions

5. Costs and reasonable attorneys' fees (if any) incurred with this lawsuit with interest thereon.

6. Other damages and relief as deemed just.

## JURY DEMAND

The Plaintiff requests trial by jury.

Respectfully Submitted

By: _Kristin Arnold_

Kristin Arnold

Pro Se Plaintiff
Email: Kristin.CreoArnold@gmail.com

# EXHIBIT A

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Kristin Arnold<br>12 Red Maple Ct.<br>Jonesboro, TN 37659 | From: | Atlanta District Office<br>100 Alabama Street, S.W.<br>Suite 4R30<br>Atlanta, GA 30303 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 410-2017-02997 | Claudia Mortimer-Kanu,<br>Investigator | (404) 562-6877 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Bernice Williams-Kimbrough,
District Director

AUG 3 1 2018

*(Date Mailed)*

Enclosures(s)

cc:    Harry M. Rowland, III
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Ninety-One Peachtree Tower
191 Peachtree St. NE
Suite 4800
Atlanta, GA 30303

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT B

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2017-02997 |
| | | and EEOC |

_State or local Agency, if any_

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Kristin Arnold** | **(301) 275-3959** | **1981** |

Street Address — City, State and ZIP Code

**12 Red Maple Ct., Jonesborough, TN 37659**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **NUCLEUS CENTRAL** | **500 or More** | **(301) 275-3959** |

Street Address — City, State and ZIP Code

**12 Red Maple Ct., Jonesborough, TN 37659**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify) **(EPA)**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **03-06-2017**  Latest **03-06-2017**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was hired by the above-name company on July 12, 2006, as an Associate Project Finance Manager. I recently learned that my counterpart, Lorenzo Bradix, Associate Project Finance Manager, earns $105,000.00 per year. I earn $89,000.00 per year. I was discharged on March 6, 2017.

II. Reena Patel, Chief Financial Officer, said that my discharge was due to the company's restructuring.

III. I believe that I have been discriminated against because of my race (African-American), sex (female), and in retaliation for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act of 1963, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Mar 15, 2017 — _Charging Party Signature_<br>Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**Documentation of list of discrimination and harassment experience during my tenure at Nucleus Global by Kristin Creo Arnold:**

- **07/12/06:** Started working for Meditech Media as a Finance Project Accountant
- **July 2007:** The Finance Manager Luke Lindahl (white male) resigned. Due to the demands of the position and being understaffed he was not able to fully train me or the Senior FPA Nan Staudt (white female) before he resigned.
- **Summer 2007:** I was told that I was not providing adequate support to the teams I was assigned to manage. I requested feedback but was not given any specific examples of issues to address or areas of improvement. Although I was more knowledgeable about the company processes and software than Nan, she was not subjected to the same criticism and derogatory comments that I was.
- **Summer 2007:** Was reprimanded for being in the restroom at the same time as a co-worker Heba Athar. She was assisting me with administering prescription medication that I was not able to apply on my own.
- **November 2008:** Notified Sandi that I was relocating to DE. She approached Ian about allowing me to work remotely. Ian Spence agreed to approve me working remotely on the condition that it did not cost the company "not one penny" to support her remotely, and that I report to the Princeton, NJ office 2 to 3 days per week; and I would have to cover my hotel, mileage/car rental when traveling. There were several white employees (male and female) that worked remotely and the company supported them with company equipment and reimbursement for company related expenses/travel.
- **Week of 12/15/08:** Ian Spence and Mark Lydiatt, President US Operations (white male) orchestrated an ambush to terminate Lynn Pryor (black female) and me without probable cause. To ensure that I was treated fairly, I provided Sandra Manning with email documentation that supported my actions. Both Lynn and me were able to avoid termination because we had documentation indicating that they had taken the correct actions, and Ian Spence had reviewed and approved the final reconciled documents that were provided to the client (isirv). Immediately following the meeting Ian retaliated by inundating me with work that was not previously assigned.
- **Jan 2009 – Jan 2012:** Was consistently berated and intimidated by Ian Spence.
- **Jan 2012:** Received notification that I was going to be promoted to a Sr. Finance Project Accountant. He told me that I was doing well which was good because I used to be awful. He reiterated that I was awful several times during that conversation.
- **Spring 2012:** Purchased water and a snack and was told by Ian that he would not allow me to be reimbursed since I had already eaten. Ian told Sandi that he wasn't paying for my snack because I didn't need one.
- **May 2012:** Attended Summit Meeting in NJ. Lorenzo was given accolades and asked to stand so that we could applaud him on three occasions. Mark never acknowledged my presence at the meeting.
- **2012-2015:** I had limited interaction with Ian Spence. He went on disability in 2015.

- **06/30/16**: Attended a meeting with Sandi, Lorenzo, and Vicky. Lorenzo and Vicky got into a shouting match about procedures but he was not reprimanded.
- **8/10/16**: Informed by Vicky Malherbe, US CFO (South African white female) that I would no longer be reporting to Sandra Manning (Sandi), Sr. Project Finance Manager (black female) and would now be reporting to her. She indicated that she wanted Sandi and me to bring our skills and knowledge to the junior FPA team members and "clones ourselves" with plans for us to focus on more strategic deliverables. I was also going to be assuming management of several of the teams Lorenzo Bradix supported.
- **9/26/16-10/15/16**: Returned from vacation Sept 26th – worked well beyond 37.5 hrs/wk including weekends to correct reporting errors and revenue over recognition by former employee, Lorenzo Bradix (black male).
- **Sunday, 10/16/16**: Andrew Duncan, a member of the Finance team (black male), reached out to Sandi and me to request to work from home due to abrupt cancellation by sitter. Andrew only needed a couple of hours to cover childcare while his wife was interviewing. Work from home was requested versus vacation day due to the need to prepare for critical internal meetings scheduled for following day.
- **10/17/16**: Reached out to Vicky regarding Andrew's work from home request. Vicky was informed that Andrew would be covering 2 hours of childcare during the day. Vicky informed me that Andrew needed to take a half day vacation leave for the day; but his time worked would be evaluated when making a final determination. Andrew worked over 10 hours on the day in question, of which 2.5 hours was spent providing childcare to his daughter. Vicky was made aware of this.
- **10/18/16**: Received email from Vicky stating while she appreciated Andrew's dedication, he would need to submit a request to use a half day of leave, even though he had worked a net of 7.5 hours (10 hrs less 2.5 hrs for childcare)
- **Week of 10/31/16**: Met with FPA Kyle Stewart (black male) and VP of Client Services (AS) Erinn Goldman (white female) to review October month-end financial reports. Upon requesting her to review specific information she berated us. When I tried to explain to her the process that all companies follow she told me I was condescending and aggressively taunted me saying that she would like to see me try to do her job.
- **11/7/16**: Sent email to Vicky and the FPA team letting them know that I would be out sick the following day due to my grandmother's emergency surgery and the uncertainty of her survival.
- **11/23/16**: Robert Verba submitted resignation letter indicating that his last day would be 12/06/16. Vicky called him within 3-4 days (the following two days were holidays) to inquire about his resignation.
- **11/28/16**: Teresa Duarte submitted resignation letter indicating that her last day would be 12/14/16. Vicky called her on 11/30/16 to inquire about her resignation.
- *11/29/16: Received email from Vicky informing me that she had spoken to HR and that I was not allowed to use sick time since my grandmother does not live with me. Informed Vicky that I had already taken all my unscheduled vacation days, including three days I took after the 11/8/16 sick day but prior to receiving the email from Vicky. When I informed Vicky that I did not have any remaining unscheduled vacation days she indicated that I should use non-compensated*

*leave. I did not challenge Vicky's request at the time because I was uncomfortable based on the previous occurrence that had taken place regarding Andrew Duncan.Additionally I was afraid of any backlash I may receive if I challenged her decision as a result.*

- **Early December 2016**: Discussed the 11/8/16 sick leave situation with FPA Robert Verba (white male); he indicated that Christine Gunderson (white female) in HR instructed him that he could use his sick leave to take his mother to doctor's appointments even though she did not live with him.
- **12/12/16**: Rhand Williams started as Finance Director at Nucleus and my reporting line changed from Vicky to him. I was not introduced to him until January 18th.
- **Week of 12/12/16**: Had scheduled catch-up call with Vicky. I was informed that Erinn Goldman had reported me to HR indicating that I had been rude to her because she felt that I was comparing her to other companies. I told her that Erinn was very abrasive and aggressive with both Kyle and me and that we were uncomfortable working with her. She said that she would talk to Kyle but did not contact him until a month later to ask what happened.
- **12/22/16**: FPA Rodney Parker (black male) submitted resignation letter indicating that his last day at Nucleus would be 1/6/17. Vicky never reached out to Rodney to discuss his resignation.
- **Approx. 12/28/16**: Called Christine Gunderson to discuss Vicky's request for me to submit non-compensated leave request since she had advised Rob Verba differently. I indicated that I was uncomfortable talking to Vicky based on the previous issues we had regarding Finance department leave policy. Christine confirmed that the policy was that I should utilize vacation, but agreed that Vicky should have notified me earlier than she did so I could plan accordingly. Christine said she would reach out to Vicky and get back to me but I never received any feedback from her.
- **01/04/17**: Aditya Patel started working at Nucleus. Although all the current FPA team members at that time were reporting to either Sandi or me they had Adi reporting directly to the Finance Director Rhand Williams (white male).
- **01/04/17 – 01/20/17**: Continuously requested access to the new 2017 financial tool but did not receive it until 02/01/17. Vicky also restructured the finance folders on the server and did not allow us access to any Finance folders going forward.
- **Mid-January 2017**: Met with Vicky to discuss team structure. She informed me that she was going to have Aditya assist FPA Elaine Stander (white female). I requested that he also assist Kyle Stewart since Rodney had resigned at the beginning of January   and had been assisting Kyle. She indicated that Kyle did not need assistance and that he was not doing the full job of an FPA. Additionally she mentioned that he did not need as much assistance as Elaine even though they are managing a similarly sized company.
- **1/19/17**: Met with Rhand Williams so he could introduce himself to me. He mentioned that other FPA's had complained about the lack of direction and communication they were receiving from Vicky. I inquired about what the plan was for future staffing and departmental structure and he indicated that they were likely going to utilize the UK model because that is what Vicky was most familiar with and it was perceived to be more efficient. I asked what that model was and why it was more efficient and he said he did not know.

- **1/19/17:** Talked to Elaine Stander and she told me how her introduction meeting with Rhand went. She indicated that he said the Sr. members of the Finance team (Sandi and me) were resistant to change. This was communicated to Elaine 30 min prior to Rhand introducing himself to me for the first time.
- **1/20/17:** Received an email from Rhand asking Kyle Stewart, Sandi, and me about the status of our Skype login status because our availabilities indicated that we were either Away or Offline. He asked if that meant that we did not work the previous day, even though he had talked to me and received several emails from me throughout the day. Additionally, he worked in the same office as Sandi and Kyle and knew they were in the office. I explained that setting my availability to Away was a mechanism I used to assist with managing requests and that there are also times when Skpe does not work due to remote server connection issues. At this point I started keeping a log of the other employees in the department that are consistently logged out of Skype (Roger McCarter(white male) and Jennifer Pignol (white female)
- **01/20/17:** Attended meeting scheduled by Vicky to give direction on our 2017 financial reports. She indicated that she would be sending us interim versions to utilize while she was working on the final versions to send to us the following week.
- **Week of 01/23/17:** Updated financial reports and met with Client Service Business Unit Leads as directed.
- **01/25/17:** Andrew Duncan submitted letter of resignation effective 02/03/17.
- **01/27/17:** Rhand spoke to Andrew and requested that he train Aditya on the companies that he supported. He did not speak to me about transitioning Andrew's work to Aditya or what the plan was for the team following Andrew's resignation even though I was Andrew's line manager.
- **02/01/17:** Received updated version of 2017 financial report template for February month-end close. Was instructed to make updates and confirm that all the formulas were correct.
- **02/01/17-02/03/17:** Sent Rhand regular updates about all month-end close deliverables
- **02/02/17:** Received email from Rhand regarding the status of the month-end close using a condescending tone about the status of the companies I was managing. The email included all members of the FPA team. I received comments from several of the people included on the email indicating that they were uncomfortable with his tone and how he addressed me as a manager while including more junior staff that reported to me.
- **02/02/17:** Andrew had his exit interview with Senior HR Manager Lenore Wawronek (white female) and told her that neither Vicky nor Rhand had spoken with him regarding his resignation.
- **02/03/17:** Vicky scheduled meeting with Andrew to discuss his resignation and inquired about him staying. This was on Andrew's last day and was 8 business days after he submitted his letter of resignation. Although Andrew reported to me and I was responsible for the companies he managed, no one has ever talked to me about Andrew's resignation or how his work was going to be transitioned.
- **02/06/17:** Received a call from Rhand Williams where he interrogated me about where I lived, the time zone I was on, and the hours that I worked. He said he was trying to figure out how I managed my time and why I was behind schedule. I had already updated him throughout the

last several days letting him know that my delay revolved around technical issues and a delay in receipt of the financial tool.

- **02/06/17**-02/14/17: Because of the stressful nature of the encounter with Rhand I experienced an immediate physical reaction and was unable to move my neck for over a week. I had to seek treatment from several healthcare providers and was told that the stress likely caused the reaction.
- **02/06/17:** Met with Vicky regarding formula issues on the new financial report. During that meeting I let her know that I was uncomfortable with Rhand's tone during our meeting that day. She indicated that she knew he had a different communication style but that she would talk to him. I also told her that he had forwarded sensitive communication between her and Sandi to Rhand to the rest of the FPA team.
- **02/07/17:** I reached out to the VP of HR Sharon Rundburg (white female) to let her know that I was not comfortable with my conversation with Rhand and the way he was targeting me. She indicated that Vicky told her that his communication style was "direct" and agreed that Skype was not an accurate or reliable means of communication.
- **02/13/17:** Received email asking about why I was not signed into Skype. Email included a screenshot showing the Skype status of Sandi, Kyle and me. I had been logged out because the server was disconnected. He asked me if I was out sick even though he had received numerous emails from me that day. I forwarded the email to Sharon Rundburg letting her know that I was feeling harassed by Rhand because he was specifically targeting me and being consistent with all the employees in the department. At that time, I had never received any messages from Rhand via Skype.
- **Week of 02/20/17**: Received Skype message from Weiying Wang, a Nucleus X Client Service member asking who had taken over management of their account following Andrew's resignation. I informed her that Aditya was assigned to manage the companies Andrew supported. I received an email from Rhand asking who had told the Nucleus X team that Aditya was supporting their accounts. Upon confirmation that I had directed Weiying the Aditya, I received an email from Rhand telling me that I was not to assign any work to Aditya since Rhand was his direct supervisor. At no time did Vicky or Rhand indicate that Aditya was not assuming all of Andrew's responsibilities.
- **03/06/17:** Received a meeting request from Vicky for Sandi and me to catch-up with her. I received a phone call at the designated meeting time from the Global CFO Reena Patel (Indian female) and Lenore. At that time they told me that the department was being restructured and all management level positions in the department were being eliminated. Further, they were eliminating all remote positions from the Finance department. I was informed that I could take a lesser position on the FPA team, but would have to relocate back to Atlanta. No information regarding the position or compensation was given to me. Further, the Roger McCarter (white male) who is a remote employee that resides in Louisville, KY was able to maintain employment in the Finance department. He had recently transferred to the Finance department in October and had no Finance background.